UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAINS PIPELINE, L.P., PHILLIPS66 PIPELINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-398** |
| **GREAT LAKES DREDGE & DOCK COMPANY, GREAT LAKES DREDGE & DOCK COMPANY, LLC OF LOUISIANA, DAWN SERVICES, LLC,** *IN PERSONAM* **AND THE DREDGE TEXAS, TUGS PACIFIC DAWN AND COASTAL DAWN, AND THEIR ENGINES, TACKLE, FURNITURE, APPURTENANCES, ETC.** *IN REM* **DEFENDANTS** | **SECTION "K"(4)** |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment (R. Doc. 40) filed by Plaintiffs, Plains Pipeline, L.P. ("Plains") and Philips66 Pipeline, LLC ("Phillips"). Having reviewed the pleadings, memoranda, record, and relevant law, the Court, for the reasons assigned, denies the motion.

**I.     BACKGROUND**

This case arises out of an allision between a dredging barge and an underwater oil pipeline. In 1953, Gulf Oil Company constructed and installed a pipeline, 12" in diameter, the relevant portion of which runs from Ostrica on the Mississippi River in Louisiana to Elmer's Junction and is called the "BOA pipeline." (Pl.'s Mem. Supp. Part. Summ. J. 1-2, R. Doc. 40; Def.'s Mem. Opp. Summ. J. 2, R. Doc. 50). The pipeline was then acquired by Chevron, sold to BP, and thereafter sold to Plains. (Def.'s Opp. 2, R. Doc. 50). The alleged incident involved the Dredge TEXAS, owned and operated by Great Lakes Dredge & Dock Company and Great Lakes

1

Dredge & Dock Company of Louisiana, LLC (collectively "Great Lakes"), which was assisted by the tugs, the PACIFIC DAWN and COASTAL DAWN. On March 17, 2012, the Dredge TEXAS arrived in that portion of Barataria Bay where the BOA pipeline ran to perform repairs to the dredge and lowered its "ladder," which held the dredge's cutter head, on the bottom of the bay to anchor its position or stop movement of the dredge. Plaintiffs allege that this action caused damage to the BOA pipeline, resulting in a loss of oil being transported through the pipeline and damage to the pipeline itself.

In their motion for partial summary judgment, Plaintiffs contend that Great Lakes failed to notify the Louisiana One Call Notification Center, pursuant to the Lousiana One-Call Law, La R.S. 40:1749.11, *et seq.*, of its intention to anchor its location by lowering its ladder and cutter head. (*See* Statement of Uncontested Facts, R. Doc. 40-14, 2; Pl.'s Mem., 4, R. Doc. 40). The Plaintiffs seek a determination of whether the Louisiana One Call statute applies in this matter statutorily. (*See* Pl.'s Mem. Supp., R. Doc. 40). Great Lakes opposes the motion, contending that the statute does not apply as Great Lakes did not intend to dredge or excavate when it lowered its ladder and cutterhead but only to anchor the dredge. (*See* Def.'s Opp., R. Doc. 50).

## II. LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted as to "each claim or defense" or "part of each claim or defense," "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.,* 953

F.2d 909, 912–13 (5th Cir. 1992)). However, if the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the elements of that claim, but only to "point out the absence of evidence supporting the nonmoving party's case." *Brown v. Trinity Catering, Inc.* 2007 WL 4365384 (E.D.La. Dec. 11, 2007) (citing *Stults,* 76 F.3d at 656).

When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir.2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County,* 246 F.3d 481, 489 (5th Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513). However, as the Fifth Circuit has explained:

> [c]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company,* 612 F. 3rd 851, 857 (5th Cir. 2010).

## III. DISCUSSION

Before addressing the merits of the Plaintiffs' motion, the Court notes the unusual nature of the motion for partial summary judgment. The Plaintiffs' claim of negligence based on the Louisiana One Call statute presupposes the application of the statute. (Pl. Compl., ¶¶ XXI-XXVI). Thus, Plaintiffs have asked for relief akin to a declaration from the court that the statute is in fact applicable. The Defendants have not moved through a cross-summary judgment on this point, instead addressing the issue of the statute's application and the issue of negligence in their Opposition. If the statute *does* apply, the Court would be faced with the question of whether the Louisiana law of negligence—which the Plaintiffs' assume applies and which expressly does not employ a negligence per se analysis[1]—would supplement maritime law or conflict.[2] Nevertheless, the statute, by its terms, does not apply to the facts of this case and the Court need not reach this issue.

As mandated by the United States Secretary of Transportation, Louisiana has adopted a "One-Call System" to alert pipeline owners and owners of other underground facilities to proposed potentially damaging activity in the vicinity of those facilities. *See United States v. Plummer Excavating, Inc.*, 65 F. Supp. 2d 1013, 1014-15 (D. Minn. 1999). Louisiana enacted its Underground Facilities or "One-Call" law, providing that "[i]t is the public policy of this state to promote the protection of property, workmen, and citizens in the immediate vicinity of an underground facility." La. R.S. 40:1746.11. The law specifically provides:

---

[1] "Louisiana has no negligence per se doctrine." *Bellsouth Telecommunications, Inc. v. Eustis Eng'g Co.*, 974 So. 2d 749, 752 (La. App. 4 Cir. 12/19/07) (citing Galloway v. State Through Dept. of Transp. and Development,654 So.2d 1345 (La.5/22/95)).

[2] "Although state law may supplement maritime law where maritime law is silent, or where a local matter is at issue, state law may not be applied where it would conflict with maritime law." *Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 582 (5th Cir.1986).

4

> Except as provided in this Section, no person shall *excavate or demolish* in any street, highway, public place, or servitude of any operator, or near the location of an underground facility or utility, . . . . without having first ascertained, in the manner prescribed in Subsection B of this Section, the specific location as provided in R.S. 40:1749.14(D) of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.

La. R.S. 40:1749.13(A) (emphasis added). Subsection B requires such person to notify the One-Call Notification Center "at least forty-eight hours . . . in advance of the commencement of any excavation or demolition activity." La. R.S. 40:1749.13(B). The statute defines "excavation" or "excavate" as the following:

> *[A]ny operation for the purpose of movement or removal of earth, rock, or other materials in or on the ground* by the use of powered or mechanical or manual means, *including pile driving, digging, blasting, auguring, boring, back filling, dredging, compressing, plowing-in, trenching, ditching, tunneling, land-leveling, grading, and mechanical probing*. "Excavation" or "excavate" shall not include manual probing.

La R.S. 40:1749.12(6) (emphasis added).

Plaintiffs contend that, though Great Lakes did not dredge in the location of the pipeline, the lowering of the cutterhead to stop movement of the dredging barge necessarily dug into the mud and removed earth. (*See* Pl.'s Mem. Supp. 4, 9, R. Doc. 40). By comparison, the Plaintiffs note that the cutterhead created a hole five feet deep, while the anchors, which were lowered after the cutter head, created only one-foot holes. *Id.* at 9. Plaintiffs' cite the fact that the Louisiana State Police Department, acting under the authority granted by the statute, issued a citation to Great Lakes after the incident for a violation of Section 1749.13(B) and Great Lakes paid the fine imposed for the violation. (Pl.'s Mem. 5, R. Doc. 40; Ex. K, R. Doc. 40-12). Great Lakes argues, however, that anchoring the Dredge TEXAS in this manner does not fall within

5

the scope of the statute for purposes of establishing negligence,[3] and that the statute should be given a strict construction as it is penal in nature.[4]

The Court notes that neither the Plaintiffs nor Great Lakes have cited any Louisiana case law addressing a similar factual circumstance, nor has the Court found that any such case exists. Thus, the Court must attempt to construe the language of the statute to determine its application here, as "[t]he starting point in every case involving construction of a statute is the language itself."[5] When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect. La. Civ.Code art. 9; La. Rev.Stat. § 1:4; *Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.,* 101 So. 3d 22, 26 (La. 10/16/12). Unequivocal provisions should be applied by giving words their generally understood meaning. La. Civ. Code art. 11; La. Rev. Stat. § 1:3; *see also Snowton v. Sewerage and Water Bd.,* 6 So.3d 164, 168 (La.3/17/09). Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. *Colvin v. Louisiana Patient's Compensation Fund Oversight Bd.,* 947 So.2d 15, 19 (La.1/17/07); *Moss v. State,* 925 So.2d 1185, 1196 (La.4/4/06). Furthermore, all parts of a statute should be given effect and courts should render no sentence, clause, or word superfluous. *See Boudreaux,* 101 So. 3d at 26.

Plaintiffs argue that, under the statute's definition, excavation would include the Defendant's activity. Though Defendants argue that "anchoring" does not fall within the ambit of the statute, the Plaintiffs state the activity was "a far cry from 'anchoring,'" as it necessarily

---

[3] Def.'s Opp. 9, R. Doc. 50.
[4] *Id.* at 9, 11.
[5] *Watt v. Alaska*, 451 U.S. 259, 265-66, 101 S. Ct. 1673, 1677, 68 L. Ed. 2d 80 (1981) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)); *see also Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.,* 101 So. 3d 22, 26 (La. 10/16/12), (citing *Oubre v. Louisiana Citizens Fair Plan,* 79 So.3d 987, 997 (La.12/16/11)) ("The interpretation of any statutory provision starts with the language of the statute itself.").

6

entailed the "movement or removal of earth" in order to slow and stop the motion of a floating barge. (Pl.'s Reply 6, R. Doc. 55). The Court agrees that Great Lakes' action constituted "anchoring," despite the fact that the method involved resulted in slightly more removal of earth than its other anchors; the activity in no way constituted any consistent and intentional removal of earth, as dredging would, and its function was to anchor and stabilize the barge.

Under the statute, while the action of anchoring might quite literally be an "operation" that requires the removal of earth, the text of the statute's definition should be construed as a whole. The non-exclusive list provided does not include "anchoring" as an activity included within the statute. Construed in light of the surrounding listed terms, it also does not appear that "anchoring" would fall within the scope of what the Louisiana legislature intended. All listed activities have great potential for damage by the sheer force required to perform them. By contrast, "manual probing," which is explicitly excluded, does not. Similarly, the "anchoring" that occurred here—whether by anchors or lowering of the cutterhead—does not involve any substantial and repeated removal of earth akin to actions such as dredging and pile-driving. Anchoring is not likely the type of activity that would require significant planning that is required by the other listed activities. Further, the statute does not purport to include all potentially damaging actions, but does include the regular, foreseeable actions taken by those operators performing potential damaging activities to underground facilities.

By interpreting the statute to include anchoring activity, Great Lakes as well as any other dredging barge would be required to place a call to the center and wait forty-eight hours before merely *anchoring* the dredging barge. Such an interpretation does not accord with the purpose of the statute and imposes an extraordinary burden on operators like Great Lakes. Indeed, Great

Lakes acknowledges that had it intended to dredge, it would have placed a call to the One-Call Notification Center before so doing.

In sum, the Court finds that the statute does not include the activity of Great Lakes and the Plaintiffs have failed to demonstrate that no material fact exists as to the contention that the Louisiana One Call statute applies to Great Lakes' activity. By virtue of finding that the statute does not apply to the circumstances of this case, the Court also concludes that the Plaintiff's claims under the One Call Statute shall be dismissed. Accordingly,

**IT IS ORDERED** that the Plaintiffs' Partial Motion for Summary Judgment (R. Doc. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' claims for Statutory Liability under the Louisiana One Call Law (Pl. Compl., ¶¶ XXI-XXV) are hereby **DISMISSED.**

New Orleans, Louisiana, this __5th__ day of ____September____, 2014.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**