UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| PLAINS PIPELINE, L.P., PHILLIPS66 PIPELINE, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO. 13-398 |
| GREAT LAKES DREDGE & DOCK COMPANY, GREAT LAKES DREDGE & DOCK COMPANY, LLC OF LOUISIANA, DAWN SERVICES, LLC, *IN PERSONAM* AND THE DREDGE TEXAS, TUGS PACIFIC DAWN AND COASTAL DAWN, AND THEIR ENGINES, TACKLE, FURNITURE, APPURTENANCES, ETC. *IN REM* DEFENDANTS | SECTION "K"(4) |

## ORDER AND REASONS

Before the Court are Plaintiffs' Motion to Strike Declarations of Robert Mehl (R. Doc. 73) and the related Motion for Summary Judgment (R. Doc. 41) filed by Defendants, Dawn Services, LLC ("Dawn"). Having reviewed the pleadings, memoranda, record, and relevant law, the Court, for the reasons assigned, grants the motions.

### I. BACKGROUND

Great Lakes Dredge & Dock Company and Great Lakes Dredge & Dock, LLC of Louisiana (collectively "Great Lakes") hired Dawn, an offshore towing company, to provide two tugboats, the M/V COASTAL DAWN and the M/V PACIFIC DAWN as support for its dredge, the dredge TEXAS, during a restoration project in South Louisiana. (Def. Mem. Supp. Summ. J. 1, R. Doc. 41). On March 16, 2012, the crew of the dredge TEXAS decided to move the dredge from the area of the restoration project to an area of calmer water. Great Lakes sent a survey crew consisting of two site mangers for the project, Armand Riehl and Keith Pearse, and the

1

captain of the dredge, Ronaldo Cisneros on a survey boat to determine an appropriate location to anchor the dredge for the repair. Once they located the area, the team used the survey boat to obtain the GPS coordinates for the location and returned to the dredge. The survey team transferred the coordinate information to the dredge's electronic chart and provided the location coordinates to the captains of the tugs. The tugs then transported the dredge TEXAS to the location, where, on March 17, 2012, the dredge's crew lowered the dredge's ladder to the seafloor. In so doing, the Plaintiffs allege that the dredge's ladder, which included a cutterhead, ruptured the Plaintiff's underwater pipeline that was used to transport crude oil. Plaintiffs filed the instant action against both Great Lakes and Dawn and their respective vessels seeking damages under maritime law for the negligence of the parties.

In its Motion for Summary Judgment, Dawn contends that, under the "dominant mind" theory, it cannot be negligent under these circumstances, where the tugs acted under the direction of the tow, the dredge TEXAS. Alternatively, if Dawn could be held negligent, it asserts that Great Lakes' actions were a supervening cause of the negligence and Dawn should be not be held liable for any resulting harm to the Plaintiff's pipeline.

II.   **LEGAL STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the "pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact," summary judgment should be granted in favor of the moving party. Fed. R. Civ. Proc. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir. 1992)). However, if the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the elements of that claim, but only to "point out the absence of evidence supporting the nonmoving party's case." *Brown v. Trinity Catering, Inc.* 2007 WL 4365384 (E.D.La. Dec. 11, 2007) (citing *Stults,* 76 F.3d at 656).

When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir.2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County,* 246 F.3d 481, 489 (5th Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513). However, as the Fifth Circuit has explained:

> [c]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company,* 612 F. 3rd 851, 857 (5th Cir. 2010).

## III. DISCUSSION

"Where damages are caused by a casualty involving a tow or an entire flotilla, courts employ the concept of the 'dominant mind' to place liability on the tug and absolve the two from liability." Thomas J. Schoenbaum, 2 Admiralty & Mar. Law § 12-6 (5th ed.); *In re TT Boat Corp.*, 1999 WL 123810, at *3 (E.D.La. Mar. 3, 1999) (Duval, J.). The "dominant mind" doctrine provides that only that vessel in control of the operation is liable, even if the entire flotilla causes damage. *Chevron U.S.A. Inc. v. Progress Marine Inc.,* 1980 A.M.C. 1637 (E.D.La. 1979), *aff'd* 632 F.2d 893 (5th Cir. 1980). Generally, "when the tug supplies the motive power she becomes the dominant mind, and the tow is required to follow directions from the tug." *Dow Chemical Co. v. Tug THOMAS ALLEN*, 349 F. Supp. 1354, 1363 (E.D.La. Sept. 14, 1972); *see Marathon Pipeline Co. v. Drilling Rig ROWAN/ODESSA*, 527 F.Supp. 824, 834 (E.D.La. Nov. 30, 1981). In that case, the tug "is responsible for the safe navigation of the flotilla" and "has the duty to exercise such reasonable care and skill as prudent navigators would exercise under similar circumstances." *Dow Chemical*, 349 F.Supp. at 1362. However, the rule provides only a rebuttable presumption that the tug is the dominant mind. 2 Admiralty & Mar. Law § 12-6 (5th ed.). If the evidence shows that the negligent act was attributable to the tow, the tow may be held liable. *El Paso Production Gom, Inc. v. Smith,* 2009 WL 2990494, at *3 (E.D.La. Apr. 30, 2009). Indeed, an arrangement giving control to the tow may be evidenced by "an agreement, expressed or implied from the circumstances." *Dow Chemical*, 349 F.Supp. at 1363. When the collision is "a result of a duty breach by the tow, and not the result of some fault or omission of the tug, the tow may be held solely liable for resulting damages." *Marathon Pipeline*, 527 F.Supp. at 834.

As the Plaintiffs acknowledge in their opposition, in order to rebut the presumption that the tug is the dominant mind, Dawn must show that the act was attributable to the tow and not Dawn's tugs or that Great Lakes was "in complete control of the operation," particularly in light of the fact that no contractual arrangement evidencing this relationship exists. Pl. Opp. 7, R. Doc. 49. Great Lakes' site manager and one of the members of the survey crew, Keith Pearse, testified that the survey crew chose the location to anchor the dredge without consulting the captains or crew members from the tugs. Pearse Dep. 21:14-19; 127:10-15, July 14, 2014, Exhibit A, R. Doc. 41. Pearse also testified that dropping the cutterhead to stabilize the dredge was a common practice. Pearse Dep. 76:19-25; 77:1-11. Though Pearse testified that he was not on the boat at the time the ladder and cutterhead were dropped, he stated that the dredge captain, Ronaldo Cisneros, would have made the decision about the safety of anchoring in that area on that day. Pearse Dep. 44:14-45:11, July 14, 2014, Exhibit B, R. Doc. 49. Mr. Cisneros confirmed Pearse's statements when he testified that the survey crew made the decision about where to locate the dredge and further testified that the tug captains played no role in that decision and would bring the dredge to whatever location given them by the survey crew and dredge captain. Cisneros Dep. 7:11-8:14; 10:18-11:5, Sept. 4, 2014. Finally, the captain the tug COASTAL DAWN, Timothy Champagne, testified that in a typical meeting with dredge personnel on the day before the incident, they discussed generally what they were going to tow, the safety of the situation, and what equipment would be necessary. Champagne Dep. 12:19-15:2, Sept. 4, 2014. According to Mr. Champagne, Great Lakes' dredge personnel chose the location of where to bring the dredge, a decision not left to his discretion as tug captain, but that as tug captain, he had a duty to safely navigate the tow to that location. Champagne Dep. 16:14-25; 54:4-15.

The Plaintiffs counter this evidence with the testimony of their expert, Marc Fazioli, according to whom the tug captains would have necessarily been part of the decision on where to tow the dredge. Fazioli Aff. 2, Pl. Opp., Exhibit A, R. Doc. 49. Mr. Fazioli states that had typical towing procedure been followed, the tugs could have stopped the dredge without the need to lower the dredge ladder to the sea floor; he also opines that the tugs failed to control the speed of the dredge making it necessary to drop the ladder and "must have" agreed with the dredge's actions in lowering the cutterhead and ladder. *Id.* These actions, he states, violate "Rules 2 and 6 of the Inland Navigation Rules of the Road." *Id.* However it is unclear what facts Mr. Fazioli bases his opinion upon, as he has not inspected the tugs or dredge or interviewed any dredge or tug personnel. Moreover, the rules to which Mr. Fazioli cites deal with the speed of the vessels, not choice of location of anchoring. *See* 33 C.F.R. §§83.02, 83.06. It is solely the choice of location of where the dredge was to be anchored which is at issue in this matter. In addition, the Plaintiffs and their expert make the statement that there were no licensed mariners aboard the dredge—a common situation[1]—without referring to any law or argument that this fact would demonstrate that, despite the lack of licensed mariners, the dredge TEXAS did not act as the dominant mind under these circumstances.

The Court has taken precaution in an attempt to avoid a premature ruling by making its review of this motion only after receiving relevant deposition testimony and considering whether to strike testimony that would unfairly prejudice the Plaintiffs as discussed in Plaintiffs' Motion to Strike the Declarations of Robert Mehl. *See* R. Doc. 73. Robert Mehl was the captain on board the PACIFIC DAWN during the relevant time related to the incident. Pl. Motion to Strike, R. Doc. 73. Dawn supplemented its Reply Brief in relation to its Motion for Summary Judgment by introducing declarations from the captains of the PACIFIC DAWN and the COASTAL

---

[1] *See Contango Operators, Inc. v. United States,* 2014 WL 1278628 at *7(S.D. Tex. Mar. 26, 2014).

DAWN. Because Mr. Mehl was not be available for deposition and would remain unavailable through the then trial date, the Court finds it fundamentally unfair to allow the declaration where Plaintiffs will have had no opportunity to cross-examine the declarant. Thus, the Court strikes the two declarations of Robert Mehl submitted in this case. (R. Docs. No. 62, 72).

In its review of the remaining pleadings, affidavits, and deposition testimony, however, the evidence overwhelmingly shows that the decision on the location to anchor the dredge was made by Great Lakes personnel, namely the survey crew members and the dredge captain, and was not made by the personnel of Dawn's tugs. The tow in this instance acted as the "dominant mind," instructing the tug captains on the location to bring the dredge as well as how the dredge would be anchored. The record demonstrates that the allision involved a sunken stationary object, the under-water pipeline, and neither Plaintiffs nor the record reveal evidence that the tugs did not act with reasonable care in towing the dredge to its location. The record also shows that the tow made the decision on the location to bring the dredge. Indeed, "[t]ugs generally move their tow at the behest of their tow; this fact does not make the tow liable if the tug crew makes foolish choices." *In re TT Boat Corporation*, 1999 WL 123810 at *4. Therefore, viewing the evidence in the light most favorable to the non-movant Plaintiffs, the Court finds that Plaintiffs have not met the burden of showing that a genuine issue of material fact exists as to the potential liability of Dawn Services and its tugs and that summary judgment should be granted in favor of Dawn Services.[2]

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Strike Declarations of Robert Mehl (R. Doc. 73) is **GRANTED**.

---

[2] The Court need not address the argument that Dawn Services' tugs were a supervening cause in the negligent act as the Court has determined that, under the general maritime law of negligence, the tugs were not acting as the "dominant mind" of the operation and cannot be held liable.

**IT IS FURTHER ORDERED** that Dawn's Motion for Summary Judgment (R. Doc. 41) is **GRANTED**.

New Orleans, Louisiana, this  17th  day of   September  , 2014.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**